# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**STANLEY E. BUDRYK,**<br><br>            Debtor | **Chapter 11**<br>**Case No. 09-11181-FJB** |

## MEMORANDUM OF DECISION ON
## <u>CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION</u>

The matters before the court are the chapter 11 plan of reorganization of debtor Stanley Budryk and the objection to such confirmation filed by Hingham Institution for Savings ("HIS"), as holder of first position mortgages on the debtor's four rental properties.  HIS objects to confirmation on various grounds, including that the plan is not feasible and therefore does not satisfy § 1129(a)(11) of the Bankruptcy Code.  Subsection (a)(11), known as the feasibility requirement, requires as a condition of confirmation a showing that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor[.]" 11 U.S.C. § 1129(a)(11).  Upon careful review of the debtor's proposed budget and the other evidence regarding feasibility that was presented at the evidentiary hearing on confirmation, including the cumulative cash flow report he filed in this case on November 11, 2009 [doc. #215], the court concludes for the following reasons that the debtor has not carried his burden under 11 U.S.C. § 1129(a)(11).  In reaching its conclusion as to feasibility, the court is mindful that the debtor need not prove that his performance is assured but only that there exists a reasonable assurance of success.  Here, default upon plan obligations in the near term appears inevitable and irremediable.

The problems with feasibility are three.  First, the debtor lacks sufficient funds to make the plan payments that must be made on the effective date of the plan.  These are payments that, by virtue of their due date, must be made from cash on hand, not from future income.

They include $20,000 in postpetition municipal obligations—real estate taxes and water and sewer bills—and an additional $50,000 for the fees of debtor's counsel, for a total of $70,000. The debtor testified that he had sufficient funds to cover the municipal obligations but otherwise presented no evidence of funding to cover these immediate obligations. His cash collateral report of November 11, 2009, which reported his cash position as of the end of October 2009, showed cash on hand at that time of $28,746.67. This amount is $41,000 short of his funding needs. It is possible that he will work out an agreement with counsel to accept payment over time, but he has neither adduced evidence of such an agreement nor shown how he could pay it over time. The debtor has not carried his burden of proof as to his ability to pay these obligations; the evidence suggests that he is far from able to make them.

Second, the debtor's budget for the first twelve months of the postconfirmation period is inaccurate, unrealistic, and insufficient to fund his ongoing expenses and needs. Under the debtor's monthly proposed budget for the first twelve months of the plan, as reduced to its simplest terms, the debtor would receive gross rental income of $15,410, from which he would pay (i) monthly debt service to HIS on four mortgages totaling $4,851, (ii) other plan obligations of $431, (iii) certain costs of maintaining the four properties, and (iv) his and his wife's living expenses of $3,490, all of which would leave excess monthly income of $2,149.

The court finds that projected gross income, all of which is derived from rental of some fourteen apartments he owns, is overstated because three of the units are presently unoccupied and in need of further renovation before he can rent them.[1] Rental income from the Waushakum Street property, projected at $4,660 per month, is presently only $3,260 and will remain so until a three-bedroom unit in that property can be finished and rented, a process that will cost $2,000 to $5,000 and take likely at least three months. Rental income from the Stearns

---

[1] The debtor owns fifteen units, but the fifteenth is presently unoccupied and cannot be rented without considerable work that the debtor has no present plans to complete. His budget projects no income from that unit.

2

Street property, projected at $3,300 per month, is presently only $1,595 per month because two of its four units remain unoccupied and in need of further renovation. This too will take at least two or three months to complete, and the cost of such completion is unclear, as a fire escape must be built or obtained and installed, and a critical gas pressure test has not yet even been undertaken. Therefore, for the first few months of the plan, gross income will be $3,105 less than projected, a figure which, by itself has the debtor operating at a $1,000 monthly deficit until additional units are brought into service.

In addition, the debtor's projected costs of maintaining the property are unrealistically low. These monthly costs, which appear as "maintenance costs" and "miscellaneous expenses" on his proposed budget, are some $300 to $400 less for each property than the debtor budgeted for the six months prior to the plan confirmation hearing (the "preconfirmation period"), this despite the fact that budgeted amounts for the preconfirmation period were consistently and often dramatically less than his actual expenditures during the same period. A realistic maintenance budget would not only match the preconfirmation budget but increase it by, on average, at least $200 per property. In short, maintenance costs should fairly be increased by $2,200 over what the debtor has projected. The immediate effect of this is to increase the monthly deficit by another $2,200. Also, if and when the debtor were to succeed in renovating and renting the three presently unoccupied units, these extra expenses would ensure that he operated at best on a break-even basis. Therefore, even at full occupancy, the debtor would have no surplus income to cover contingencies—such as the repairs, nonpayment of rent, and vacancies that precipitated this chapter 11 filing—or to cure arrearages that accrued before he succeeded in renting the unoccupied units.

The debtor has made progress during this case—Herculean in view of his limited income and the condition of his Stearns Street property—in readying additional rental units for occupancy. Thus far, however, only two new units have been rented, and three remain in process. Progress has not been as fast as the debtor repeatedly predicted and promised during

the nine months of his case. The court does not find it likely that the debtor will complete and rent the remaining units in time to begin funding this plan in a month or so, meaning that he is likely to fall considerably behind on debt service or other plan obligations from the start. A realistic view of maintenance expenses means he will have no ability to recover from early arrearages.

The third problem with feasibility is the debtor's historical record. This is the Debtor's third chapter 11 case, following filings in 1991 and 1998, both of which resulted in confirmed chapter 11 plans. Notwithstanding the latter reorganization, counsel's fees from his last case remain unpaid, some nine years after confirmation of that plan. In view of this history and the factual findings above, the court cannot find that confirmation of this plan is not likely to be followed by liquidation or a need for further reorganization. Accordingly, by separate order, and without need to address the other grounds on which HIS objects to confirmation, the court will sustain HIS's objection and deny confirmation of the plan.

Date: December 3, 2009

Frank J. Bailey
United States Bankruptcy Judge